[Civ. No. 7844. First Appellate District, Division Two.—August 4, 1931.]

N. W. SEXTON, Appellant, v. LAWRENCE F. BOL-LINGER et al., Respondents.

Bertram H. Ross and Samuel T. Bush for Appellant.

Tinning & Delap and Homer W. Patterson for Respondents.

STURTEVANT, J.—The plaintiff commenced an action against the defendants to foreclose a mechanic's lien. The trial court made findings in favor of the defendants and from a judgment entered thereon the plaintiff has appealed.

In his complaint the plaintiff based his cause of action on a written contract employing him as architect. The indenture of employment, set forth as an exhibit, is dated January 22, 1929. In their answer the defendants inserted certain denials and then they set forth certain affirmative defenses and among others they pleaded that the written contract was modified and rescinded. The trial court made a finding in favor of the defendants on the issues presented by that affirmative defense. The plaintiff earnestly contends that said finding is not supported by the evidence that was introduced at the trial.

As early as 1927 the defendant L. F. Bollinger commenced the attempt of building a hospital in Richmond in Contra Costa County. At first he tried to organize a stock company and to issue $500,000 in stock. On that line he proceeded until it transpired that the proposition could not be put over and he stopped all proceedings and refunded moneys received and was about to give up the project.

A little later the plaintiff called on him and they discussed a modified project and ways and means. Following that conversation the plaintiff drew up plans and specifications for a building that would cost approximately $140,000.

It was a part of their plan that second mortgage notes should be issued to pay for the land on which the hospital was to be located and to pay the architect. On January 22, 1929, the plaintiff prepared and thereafter he and Mr. Bollinger executed a written contract by the terms of which Mr. Bollinger, as owner, employed the plaintiff, as architect, to build the hospital. Among other things that instrument provided: "The Owner agrees to pay the Architect at the rate of six per cent, hereinafter called the basic rate, computed and payable as stated in the said conditions and to make any other payments and reimbursements arising out of the said conditions. Payments to be made as follows: $200.00 upon completion of Blue Prints & specifications including complete engineering plans. 50% of fee when available from receipt of Bank loan. Balance in 2nd Mortgage notes. These to be the first ones issued of the Series." On February 7, 1929, a written application for a loan of $75,000 was made to the Richmond branch of the American Trust Company. The bank denied the application, but offered to make a loan in the sum of $40,000. At about that time the plaintiff had attempted to interest Liebert & Trobeck as contractors. The contractors, the plaintiff and Mr. Bollinger attended at a meeting at the bank, where they had an interview with Mr. Younce, the cashier. In that interview Mr. Younce stated to all of them that the bank loan would be available to pay for labor and material, but not to pay the fees of an architect and that no part or portion of the loan could be used for any such purpose. Mr. Bollinger and Mr. Younce both testified that in that conversation the plaintiff stated that he would take stock in the Hospital Richmond in payment of his fees. As we understand the record, down to the time of said conversation, no property had actually been bought on which to build the hospital. But about that time a site was found available. On interviewing the owner of the land it was found that he would make a conveyance thereof and accept a second mortgage in payment. After making some inquiry Mr. Bollinger was able to negotiate a loan from his aunt for the additional sum of $10,000. At about this time the plaintiff stated to Mr. Bollinger: "Carry on, I will stick by you and will get through somehow." When the foregoing arrangements had all been made the plaintiff proceeded to make

modified plans and specifications and thereafter the building was commenced in June, 1929. Soon after the building was commenced Mr. Bollinger made a supplemental application to the corporation commissioner for permission to issue stock. Before doing so he stated to the plaintiff that the only way in which the plaintiff could be compensated would be for him to take stock in the corporation. The plaintiff stated in reply that before giving his consent he wanted to confer with his attorney. Mr. Bollinger testified that thereupon Mr. Sexton and he called on Mr. Jerome White, an attorney at law, in San Francisco and stated the facts to Mr. White, and that Mr. White told Mr. Bollinger to proceed and make his application for permission to issue stock to the plaintiff in payment for his services. The application was made and granted. Thereafter on August 15, 1929, three certificates of stock were issued in the name of the plaintiff. When Mr. Bollinger tendered them to the plaintiff he hesitated about receiving them and telephoned to Mr. White. When he hung up the telephone the plaintiff asked Mr. Bollinger to go with him to Mr. White's office, which they did on September 12, 1929, and on arriving there left the certificates of stock with Mr. White's secretary, who, in the absence of Mr. White, delivered a receipt for the stock. About two weeks later that stock was returned to Mr. Bollinger by registered mail and no communication accompanied it. On October 4th the plaintiff produced an escrow agreement and asked Mr. Bollinger to accompany him to the American Trust Company and there deposit the stock in escrow. That was done. On November 15, 1929, another certificate was issued to the plaintiff. On November 25th the plaintiff was needing money and made an appeal to Mr. Bollinger for cash. As a result of that appeal Mr. Bollinger offered to purchase four shares of the stock then in escrow. The offer was accepted and the transfer was made. However, the other shares of stock were left in escrow and, as we understand the record, are still in the possession of the American Trust Company. Thereafter on January 27, 1930, the plaintiff commenced this action.

It is an admitted fact that the $200 payable to plaintiff "upon completion of blue prints and specifications" has been paid. Scanning the statement of facts hereinabove recited, we think it is clear that there was evidence that the

parties modified and abandoned the written contract on which the plaintiff relies and that the finding under attack is sustained by the evidence.

In their brief the defendants present certain other points. However, in view of what has been said above, it is unnecessary to discuss them.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 3, 1931.